**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANYIELL MONTGOMERY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, MICHAEL BAILEY, and SCOTT VELORA<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-5287<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Danyiell Montgomery works for Defendant City of Chicago ("the City") in the Department of Transportation as a concrete laborer. She alleges that the City, together with Defendants Michael Bailey and Scott Velora, subjected her to significant workplace abuse based on her sex (female) and pregnancy status; her race (African American); and disability. Ms. Montgomery brings suit under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e-2 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; 42 U.S.C. § 1983; and the common law of Illinois.

Before the Court today are separate motions to dismiss from each Defendant. All Defendants argue, for varying reasons, that Ms. Montgomery's amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to plausibly allege any legal claim. Mr. Bailey's motion also contains a request to strike certain portions of the amended complaint. After review of the amended complaint and all briefs, the Court grants in full Mr. Bailey's motion to dismiss [40] and Mr. Velora's motion to dismiss [45]; it grants in part and denies in part the City's motion to dismiss [46] and Mr. Bailey's motion to strike [40]. Counts I, II, and III may proceed. Count IV is dismissed without prejudice. In Count V, claims of assault occurring prior to May 15, 2024 are dismissed with

prejudice; claims of assault occurring on or after that date are dismissed without prejudice. In Count VI, claims of retaliation for internal complaints are dismissed with prejudice; claims of retaliation for speaking to the news are dismissed without prejudice. Finally, the Court strikes paragraphs 2 and 3 from Count V of the amended complaint.

## BACKGROUND

The following facts are taken from Ms. Montgomery's amended complaint, dkt. 30 [hereinafter Am. Compl.], and are assumed true for the purpose of resolving this motion.

Plaintiff Danyiell Montgomery, an African-American woman, is a Concrete Laborer assigned to the Chicago Department of Transportation, a department of Defendant City of Chicago's government. She has been in her current position since May 1, 2023 and has worked for the City in other roles since 2016. She became pregnant in or around in April 2023, shortly before beginning her current role with the City.

Almost immediately upon beginning her work as a Concrete Laborer, her coworker Defendant Michael Bailey began harassing Ms. Montgomery and subjecting her to discriminatory treatment. Specifically, he demeaned her, called her "disabled" for being pregnant, and told her she should leave if she can't do the job. On May 5, 2023, Plaintiff texted her foreman that she would not return to the site and would seek leave to avoid any issues. A few days later, Ms. Montgomery's pay was docked after Mr. Bailey falsely claimed that she left work.[1]

Ms. Montgomery apparently continued to work in proximity to Mr. Bailey. About a week after her pay was docked, Mr. Bailey criticized Ms. Montgomery's work pace, again called her disabled, and told her she should be at home if she is pregnant. At the time, Ms. Montgomery was about nine weeks

[1] Because the Court must draw all reasonable inferences in the plaintiff's favor, the Court interprets these allegations to mean that Ms. Montgomery texted her foreman to say that she would not be returning on the next workday, but that Mr. Bailey falsely claimed that Ms. Montgomery left in the middle of the day.

pregnant. During this time, Mr. Bailey also displayed a firearm to Ms. Montgomery and told her that he kept it "for people like you." Ms. Montgomery understood Mr. Bailey's actions as intimidation and a threat of violence against her owing to her race, sex, and/or pregnancy. Ms. Montgomery reported these interactions with Mr. Bailey to the City's Human Resources department and she filed an EEO/violence-in-the-workplace complaint. However, the City took no remedial action against Mr. Bailey.

Beginning on May 31, 2023, Ms. Montgomery took an extended leave of absence under the Family Medical Leave Act and based on personal disability stemming from stress and health concerns related to her pregnancy. She gave birth on October 4, 2023, and returned to work for the City on or around November 21, 2023. Upon her return, she was initially assigned once again to work with Mr. Bailey, an assignment that she reported as intimidating. She was then moved to a different worksite, apparently with a different foreman. However, Mr. Bailey instructed her new foreman to tell Ms. Montgomery to "bring her Black ass over here."

On February 5, 2024, Ms. Montgomery filed *pro se* complaints with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged discrimination and harassment based on color, pregnancy, race, sex, and EEO activity. On February 12, 2025, the U.S. Department of Justice notified Ms. Montgomery that she had a right to sue under Title VII and the ADA.[2] She timely filed her initial complaint in this case on May 13, 2025. Dkt. 1.

Ms. Montgomery also discussed her case with a television news show, which aired her interview on or about the same day that she filed her initial complaint. In her story, Ms. Montgomery discussed "the City of Chicago's treatment of employees, policies for pregnant workers, and the City's

[2] Ms. Montgomery's complaint was processed by the DOJ, rather than the EEOC, because the City is a public employer.

compliance with equal employment and anti-retaliation laws." Am. Compl. *9.[3] The next day, Mr. Bailey drove through Ms. Montgomery's job site, allegedly intending to intimidate and harass her, or worse, in retaliation for identifying him in her initial complaint and in the media. Ms. Montgomery believes that Mr. Bailey did so "while on the City's clock" and while in possession of his previously-displayed firearm. *Id.* at *8.

Ms. Montgomery states that she has an "ongoing fear for her life" because the City permits Mr. Bailey to carry a concealed weapon while on the job, despite not being a peace officer and despite an allegedly violent past. *Id.* She also alleges, more generally, that the City has discriminated against her by, *inter alia*, failing to discipline Mr. Bailey; creating a hostile work environment; subjecting Ms. Montgomery to disparate treatments in assignments; subjecting her to work conditions, such as hard labor, that were inconsistent with pregnancy-related limitations; and failing to engage in a good-faith interactive process under the ADA and the Pregnant Workers Fairness Act. She further claims that investigations have revealed that Mr. Bailey has harassed and discriminated against other City employees on the basis of their protected characteristics. She also alleges that the City, Mr. Bailey, and her supervisor, Defendant Scott Velora, retaliated against her in violation of the First Amendment by retaliating against her for raising workplace complaints and for speaking about her lawsuit with the media.

On August 29, 2025, Ms. Montgomery amended her complaint to include allegations of wrongful conduct occurring after she filed her initial complaint, and to add Mr. Velora as a defendant. Each Defendant subsequently filed a motion to dismiss for failure to state a claim. Dkt. 40, 45, 46. All parties timely filed their respective response and reply briefs, after which this Court took all three motions under advisement.

---

[3] The paragraph numbering in the amended complaint resets halfway through the document. To avoid confusion, the Court will cite the amended complaint by internal page number, rather than paragraph number.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss a complaint under either Rule, courts accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam).

## DISCUSSION

### I. Workplace Discrimination Claims (Counts I, II, and III)

Counts I, II, and III of the amended complaint allege that the City and its employees discriminated against Ms. Montgomery on the respective bases of sex/pregnancy, race, and disability. Title VII protects employees, including public employees, from discrimination on the basis of sex, race, or other protected characteristics not at issue here. 42 U.S.C. § 2000e-2(a). The definition of sex discrimination includes discrimination against women on the basis of pregnancy. *Id.* § 2000e(k). The ADA similarly protects disabled employees, or those perceived as disabled, from discrimination. 42 U.S.C. § 12112. Under both laws, an employer can be held liable if there is such pervasive discrimination in the workplace as to constitute a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986); *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021). Minor criticisms, disagreements with other employees, and other less significant interactions do not expose an employer to liability. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). However, at the motion to dismiss stage, the pleading standards for alleging employment

discrimination are "undemanding." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1084–85 (7th Cir. 2008).

*A. Administrative Exhaustion*

First, the City argues that Ms. Montgomery's claim for racial discrimination is barred by a failure to exhaust her administrative options. Although Ms. Montgomery checked the box for racial discrimination on her EEOC complaint form, *see* dkt. 1-1, the City claims that the description of her grievance on that form does not present any issues of racial discrimination. Dkt. 47 at *7–8 (citing, *inter alia*, *Herr v. City of Chicago*, 447 F. Supp. 2d 915, 920 (N.D. Ill. 2006) (Castillo, J.)). It is true that a plaintiff may not pursue discrimination claims that she did not include in her EEOC complaint. *See Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). But the City construes this rule far too stringently. The Seventh Circuit has cautioned that the EEOC (and ADA) administrative exhaustion requirements are "not intended to erect 'elaborate pleading requirements' or 'let the form of the purported charge prevail over its substance.'" *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 477 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (quoting *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1138 (7th Cir.1994)).

A claim falls within the scope of an EEOC complaint if it is "like or reasonably related to" the charges in the EEOC complaint and if it "reasonably could have developed from the EEOC's investigation of the charges before it." *Id.* at 477 (quoting *Cheek*, 97 F.3d at 202). "This requirement serves to enhance the administrative enforcement process by ensuring that the EEOC can conduct a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute." *Id.* at 476–77. Here, Ms. Montgomery's brief description in her grievance may not have included a description of racial discrimination. However, she checked the appropriate box to provide notice that she was bringing such a claim, and then she proceeded to provide evidence to the EEOC of racial discrimination by Mr. Bailey. Am. Compl. *3–4. The current

claim of racial discrimination in her complaint is clearly "like or reasonably related to" the box-check allegations of racial discrimination in her EEOC complaint; and the evidence she provided gave the EEOC adequate opportunity to investigate charges of racism and gave the City adequate notice of what she complained about. The twin goals of the administrative exhaustion requirement were therefore satisfied. The court accordingly finds that Ms. Montgomery's claim of racial discrimination is not barred for failure to exhaust administrative remedies.

### *B. Hostile Work Environment*

The City argues that Ms. Montgomery failed to allege that she suffered any adverse employment action because of her sex, pregnancy, or any disability. The City does not appear to contest that she suffered racial discrimination, except inasmuch as it challenges her exhaustion of administrative procedure (as discussed above). *See* dkt. 47 at *6–8. The Court agrees that Ms. Montgomery has not clearly identified any adverse employment action that the City took against her. However, the City's argument for dismissing Ms. Montgomery's workplace discrimination claims ignores the possibility that she suffered illegal discrimination through a hostile work environment, despite her specific invocation of that standard of liability. *See* Am. Compl. *6–7.

"To succeed on a hostile work environment claim, a plaintiff must show: (1) unwelcome harassment; (2) based on a protected characteristic; (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) a basis for employer liability. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021) (citing *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021)). The test is the same for Title VII claims and ADA claims. *Id.* Here, Ms. Montgomery alleges that Mr. Bailey mocked, demeaned, and harassed her on multiple occasions on the basis of her race, pregnancy, and/or

perceived disability.[4] Am. Compl. *3–4, 5–7. The harassment was so severe that she requested a change to a different worksite within five days. *Id.* at *3. The City allegedly proceeded to dock her pay based on a false allegation from Mr. Bailey. *Id.* Ms. Montgomery alleges that the City refused to respond to her reports of harassment and of an assault (or at least threat of violence) in the workplace that was apparently motivated by one or multiple of Ms. Montgomery's protected characteristics. *Id.* at *4, 6; *see also supra* section III. She also alleges that the City assigned her hard labor "inconsistent with pregnancy-related limitations." *Id.* at *5. She eventually took an extended leave of absence due to the stress of her workplace. *Id.* at *6. When she returned, she was initially assigned to once again work with her harasser, Mr. Bailey; and even when assigned to a different worksite, he continued to harass her in racial terms. *Id.* *4.

Collectively, these allegations more than suffice to state a claim for a hostile working environment based on sex/pregnancy, race, and/or perceived disability. The harassment was clearly unwelcome and related to Ms. Montgomery's protected characteristics. It was severe enough that she sought different assignments and eventually took an extended leave of absence, which certainly constitute alterations to the conditions of her employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (listing examples of effects that a hostile work environment might produce). Finally, the City is potentially liable for the hostile work environment that Ms. Montgomery experienced because she alleges that she notified the City in multiple ways about the situation, including informal reports to supervisors, requests for reassignment, official internal complaints, and official EEO and ADA administrative complaints. *See Vance v. Ball State Univ.*, 570 U.S. 421 (2013) ("[A]n employer is directly

---

[4] Pregnancy is not normally considered a disability within the meaning of the ADA, unless it leads to long-term chronic impacts. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 553 (7th Cir. 2011), *abrogated on other grounds by Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015). Ms. Montgomery has not alleged any such impacts, nor has she alleged any other disability. However, as the City acknowledges, the ADA can be implicated if a plaintiff is discriminated against for a *perceived* disability, regardless of whether an actual disability exists. 42 U.S.C. § 12102(3)(A); *see* City MTD Br. *10.

liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior.") In sum, all four elements of a hostile work environment claim have been satisfied for each of Ms. Montgomery's protected characteristics at issue.

The Court therefore finds that Ms. Montgomery's allegations plausibly establish that she experienced a hostile work environment and thus that the City discriminated against her on the basis of sex and pregnancy, race, and/or perceived disability. The Court denies the City's motion with respect to Counts I, II, and III of the amended complaint.

## II. *Monell* Claim (Count IV)

Ms. Montgomery alleges that the City is liable under 42 U.S.C. § 1983 for violating her rights under federal law by failing to remedy the hostile work environment she suffered, despite notice of her issues and official policies that should have required remediation. Because § 1983 does not permit suits on the basis of *respondeat superior*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Consequently, a municipality such as the City can only be sued under § 1983 when such actions stem from a municipal policy, *id.*, a category that includes formal or official policies, informal policies that have been adopted in practice, and individual acts directed by those with final decision-making authority, *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002). Such actions implicate § 1983 because they may fairly be attributed to the municipality itself and not only to an individual employee. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 694).

The City argues that Ms. Montgomery's brief *Monell* claim must be dismissed because she has failed to establish the existence of any municipal policy that led to a violation of her rights. As noted above, Ms. Montgomery has successfully alleged that she suffered illegal discrimination. But the fact that she experienced such discrimination herself is not enough, by itself, to infer the existence of a

policy (formal or informal) directing such discrimination to occur. *See Cornfield v. Consolidated High School Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993); *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003). Ms. Montgomery argues in response that the City's repeated failure to implement its anti-harassment policies implies that an informal "policy of inaction" existed. Dkt. 56 at *4 (citing *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (en banc)). But demonstrating the existence of an informal policy such as the one Ms. Montgomery alleges requires significantly more evidence. Typically, successful *Monell* plaintiffs supply reams of evidence from multiple people to establish a widespread pattern of illegal behavior. Here, Ms. Montgomery's detailed allegations concern only her own mistreatment, with one small exception. In the next Count, Ms. Montgomery mentions that Mr. Bailey has "harassed and discriminated" against other minority City employees. Am. Compl. *8. However, she provides no information about the content of this harassment (other than that slurs may have been involved), when it took place, the number of other minority employees whom Mr. Bailey has harassed, or whether any supervisors or decision-making officials of the City were aware of his conduct toward other employees. Absent such details, the Court cannot conclude that the City had an unofficial policy of permitting harassing behavior.

Ms. Montgomery's allegations concerning her own mistreatment are sufficient to establish liability under Title VII and the ADA, but they do not suffice to establish § 1983 liability under *Monell*. She has not plausibly shown that an unofficial policy of promoting or condoning harassment existed; he has not alleged that her discrimination occurred due to a decision from a City official with policy-making authority; and she appears to concede that her discrimination was contrary to the City's officially published policies. Ms. Montgomery has failed to state a claim under § 1983 against the City and the Court therefore grants the City's motion to dismiss Count IV of the complaint.

## III. Allegations of Assault by Michael Bailey (Count V)

Ms. Montgomery accuses Mr. Bailey assaulting her on at least two occasions. First, she claims that Mr. Bailey assaulted her on or about May 15, 2023, when he showed her his gun and attempted to intimidate her. Second, she claims that Mr. Bailey assaulted her on or about May 14, 2025, the day after her news story aired, when he drove to her worksite to intimidate her. Under Illinois common law, civil assault is an intentional tort that occurs when the defendant makes "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Schweihs v. Chase Home Fin. LLC*, 2021 IL App (1st) 191779, ¶ 58 (quoting *Parrish v. Donahue*, 110 Ill. App. 3d 1081 (1982)). Mr. Bailey argues that the first alleged assault is time barred, and that Ms. Montgomery has failed to state a claim with respect to the second assault.

### *A. Alleged Assault on May 15, 2023*

The Illinois Local Government and Governmental Employee Tort Immunity Act requires any claim that a public employee committed assault to be brought within one year of accrual. 745 ILCS 10/8-101(a). Mr. Bailey is employed by the City and is therefore a public employee; it also appears that the alleged assaults happened while he was on the clock for the City. Am. Compl. *4, 8. As such, any assault that Mr. Bailey may have committed against Ms. Montgomery prior to May 13, 2024 (one year before she filed her initial complaint) is presumptively time-barred, regardless of whether the claim would otherwise be colorable. *Taylor v. Board of Education of City of Chicago*, 2014 IL App (1st) 123744 at ¶ 46 (2014)

Ms. Montgomery does not contest the general applicability of this one-year statute of limitations, but she claims that Mr. Bailey's conduct constitutes a continuing violation when connected with his later alleged assault in 2025. If that rule applies, then "the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota*

*Motor Sales, U.S.A., Inc.,* 199 Ill.2d 325, 345 (2002). However, as the Supreme Court of Illinois has held, in a case cited by Ms. Montogomery, the "continuing violation" rule requires "continuing unlawful acts and conduct," such that the defendant's conduct should be understood "as a continuous whole for prescriptive purposes." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278–79 (2003) (citations omitted). It does not apply to a series of "discrete decision[s]" by a defendant to commit separate torts. *Id.* at 280. The *Feltmeier* court ultimately applied the continuing violation rule to the plaintiff's claim of intentional infliction of emotional distress, but it did so by distinguishing it from assault and other torts for which the rule will not generally be applicable. *Id.* at 281, 284; *see also Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 347 (2002).

Here, Ms. Montgomery's amended complaint does not display the sort of conduct to which the continuing violation rule applies. Although it appears from the pleadings that Mr. Bailey's display of his firearm plausibly met the legal definition of assault, Ms. Montgomery alleges no behavior by Mr. Bailey between May 15, 2023 and May 14, 2025 that put her in apprehension of immediate physical harm. Ms. Montgomery has clearly alleged a continuing pattern of harassment by Mr. Bailey, but she has not alleged a continuing pattern of assault. Rather, she has alleged two discrete assaults. Even accepting *arguendo* that the continuing violation rule can potentially apply to assault, it does not apply here. The Court therefore find that any assault committed by Mr. Bailey prior to May 13, 2024—including the display of his firearm on May 15, 2023—is time-barred under the laws of Illinois.

*B. Alleged Assault on May 14, 2025*

With respect to the alleged assault on May 14, 2025, Mr. Bailey argues that Ms. Montgomery's amended complaint does not establish that she had any contemporary knowledge of Mr. Bailey driving through her worksite with intent to intimidate her. In her amended complaint, Ms. Montgomery writes that "It is with information and belief that Baily drove [to] Plaintiff's assigned worksite on May 14, 2025, while still being in possession of his firearm while on the City's clock." Am. Compl. *8. Mr.

Bailey reads this to mean that Ms. Montgomery did not actually see Mr. Bailey, meaning that he could not have placed her Montgomery in "reasonable apprehension" of an imminent battery and therefore could not have committed the tort of assault. Dkt. 41 at *4 (quoting *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004)). Mr. Bailey's interpretation of the sentence quoted above is grammatically possible. However, when adjudicating a motion to dismiss, the Court must draw all reasonable inferences in the plaintiff's favor. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 194 (2024). It is just as possible (and, in context, arguably more plausible) that what Ms. Montgomery pleaded based on information and belief was not Mr. Bailey's general presence, but rather the fact that he had a gun. The Court will therefore adopt that interpretation of the passage for the purpose of resolving this motion.

Nevertheless, even assuming that Ms. Montgomery knew that Mr. Bailey was at her worksite, and even crediting her general fear of the man given their prior encounters, her allegations still fall short of establishing the elements of common-law fraud. There is nothing in the amended complaint indicating that, when he drove through the worksite, Mr. Bailey made "an intentional, unlawful offer of corporal injury by force" toward Ms. Montgomery. *Schweihs*, 2021 IL App (1st) 191779, ¶ 58. She does not describe any verbal threats made by Mr. Bailey; nor does she describe physical behavior that might reasonably create an apprehension of "harmful or offensive contact," such as driving the car directly at Ms. Montgomery, or pointing a gun at her. Restatement (Second) of Torts § 21 (1965). Additionally, when bringing a claim of assault, "a victim's apprehension must be of an immediate or imminent battery, not of an indeterminate future harm." *People v. Wareing*, 2025 IL App (5th) 231216-U, ¶ 34 (citing *People v. Kettler*, 121 Ill. App. 3d 1, 6 (1984)). Here, Ms. Montgomery has not stated that she had a "well-founded fear of imminent peril." *Schweihs*, 2021 IL App (1st) 191779, ¶ 58. She states in a subsequent paragraph that she has "an ongoing fear for her life" stemming from Mr. Bailey's conduct, but that is insufficient to establish that Ms. Montgomery had a particularized fear of an imminent battery at the time. The Court therefore finds that Ms. Montgomery's amended complaint

does not plausibly allege that Mr. Bailey committed assault against her at any point on or after May 15, 2024.

The Court does not wish to diminish the seriousness of Ms. Montgomery's claims about Mr. Bailey actions. His alleged conduct, if true, was intimidating, coercive, and inappropriate, to say the least. But the Court cannot let a claim proceed when the plaintiff has not plausibly established the requisite elements. The Court therefore dismisses Count V of the amended complaint. The dismissal is with prejudice with respect to allegations of assault by Mr. Bailey occurring before May 15, 2024; but it is without prejudice with respect to allegations of assault occurring on or after that point.

## IV. Allegations of First Amendment Retaliation by All Defendants (Count VI)

Over the last several years, Ms. Montgomery has raised complaints relating to her coworkers through internal procedures; and she also spoke publicly about this lawsuit with local news. She alleges that these activities are protected under the First Amendment and that all three Defendants retaliated against her under color of state law for engaging in these activities.

To state a claim under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment to the U.S. Constitution, a plaintiff must establish that "(1) the employee's speech was constitutionally protected; (2) the employee has suffered a deprivation likely to deter free speech; and (3) the employee's speech was a motivating factor in the employer's decision." *Redd v. Nolan*, 663 F.3d 287, 294 (7th Cir. 2011). Additionally, a plaintiff must establish that the defendant in question was a person acting under color of state law. *See, e.g., Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). All three Defendants argue that Ms. Montgomery's internal complaints are not protected First Amendment activity. No Defendant attempts to argue that Ms. Montgomery's report to the news falls outside the protections of the First Amendment, but they each bring additional individual arguments that Ms. Montgomery has otherwise failed to state a claim for retaliation following her news report. The Court will therefore begin by determining whether Ms. Montgomery's internal

complaints constitute protected constitutional activity, and will then proceed to examine the claims against each individual Defendant.

*A. Constitutionally Protected Speech*

"For a public employee's speech to be protected under the First Amendment, the employee must show that (1) [she] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [her] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (internal quotation marks omitted); *see also Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."). All Defendants argue that Ms. Montgomery's made her internal complaints as an employee (rather than as a private citizen)and that they thus do not constitute protected speech for the purposes of a First Amendment retaliation claim.

In the wake of *Garcetti v. Ceballos*, the Seventh Circuit has developed robust caselaw for determining whether a public employee's workplace complaints constitute employee speech or private citizen speech. *See Carter v. Illinois Gaming Bd.*, No. 18 C 7039, 2020 WL 1639914, at *3 (N.D. Ill. Apr. 2, 2020) (Feinerman, J.) (collecting cases). The key inquiry is whether Ms. Montgomery made her complaints "pursuant to [her] official duties." *Garcetti*, 547 U.S. at 421. This inquiry "requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Houskins v. Sheahan,* 549 F.3d 480, 490 (7th Cir.2008) (citation omitted). As summarized by another judge in this district, the Seventh Circuit has repeatedly held that "if the public employee reports official misconduct in the manner directed by official policy, to a supervisor or an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment." *Carter*, 2020 WL 1639914, at *3; *see also McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) (Coleman, J.).

Here, regardless of whether reporting misconduct in the workplace was part of Mr. Montgomery's job description, she alleges that she raised her complaints to supervisors and to HR in accordance with the City's official complaint policies. Am. Compl. *4. Accordingly, it appears that Ms. Montgomery raised her complaints as an employee, rather than as a private citizen, and that the complaints therefore are not protected under the First Amendment for the purposes of a retaliation claim. Ms. Montgomery's arguments to the contrary advance the position that a public employee's speech can be protected if it concerns a matter of public interest. *See, e.g.,* Dkt. 56 at *5. But such arguments miss Defendants' point, which is that speech made *as a public employee* is not protected, regardless of whether it relates to a matter of public concern. *Garcetti*, 547 U.S. at 421. Ms. Montgomery has no answer for this argument. The Court therefore dismisses all claims of retaliation related to Ms. Montgomery's internal complaints.

B. *Alleged Retaliation by Mr. Bailey*

Ms. Montgomery alleges that, after she spoke to the news, Mr. Bailey made "Threats, intimidation, and/or adverse employment actions" toward her and that he drove through her worksite to intimidate her. Am. Compl. *9–10. The general allegations of threats and intimidation lack specificity and as such are inadequate under Rule 8(a) to put Mr. Bailey on notice of what he allegedly did. *Twombly,* 550 U.S. at 555. With respect to the allegation of driving through Ms. Montgomery's workplace, Mr. Bailey argues that Ms. Montgomery has not established that he acted under color of state law or that he was induced to act by her news story.

"'[M]erely private conduct, no matter how discriminatory or wrongful,' cannot lead to § 1983 liability." *Reardon v. Danley*, 74 F.4th 825, 828 (7th Cir. 2023) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Thus, Ms. Montgomery's claim for First Amendment retaliation can only succeed against Mr. Bailey if she shows that he was acting "under color of state law." 42 U.S.C. § 1983. It is undisputed that Mr. Bailey is an employee of the City, but "An action is not 'under color of state

law' merely because it is performed by a public employee." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Instead, the operative question is whether Mr. Bailey acted while cloaked in the authority of the state. *Case v. Milewski,* 327 F.3d 564, 567 (7th Cir. 2003). Mr. Bailey contends that Ms. Montgomery has failed to show anything connecting his actions to his role as a public employee. However, Mr. Bailey is mistaken. Ms. Montgomery alleges that Mr. Bailey drove through her worksite "while on the City's clock." Am. Compl. *8. In general, actions taken by a public employee while on duty are under color of state law. *Case*, 327 F.3d at 567 (collecting cases). It is possible that Mr. Bailey's alleged decision to drive to Ms. Montgomery's worksite is not within even the outer bounds of his official duties; if that is the case, then Mr. Bailey could not have been a state actor. *Honaker v. Smith*, 256 F.3d 477, 484–85 (7th Cir. 2001). But for the purposes of a motion to dismiss, Ms. Montgomery has plausibly established that Mr. Bailey drove through the worksite under color of state law.

Mr. Bailey also contends that Ms. Montgomery's amended complaint does not establish that he drove through her worksite in response to her news story. She does not specifically establish that Mr. Bailey was aware of the news report, and the story specifically declined to mention Mr. Bailey's name. *See* Leah Hope, *Lawsuit Alleges Pregnant Chicago Department of Transportation Worker Faced Racist, Sexist Harassment*, ABC7 Chicago (May 14, 2025), https://abc7chicago.com/post/lawsuit-city-chicago-department-transportation-alleges-pregnant-cdot-worker-danyiell-montgomery-harassed/16416544/.[5] Mr. Bailey is correct that the article refused to name him, but the resulting implication—that he could not have known that the article concerned him—is unavailing. The news story covers Mr. Bailey's actions as described in the amended complaint, and it specified that the "unnamed person" was a co-defendant with the City in Ms. Montgomery's suit. At that time, the only

[5] Mr. Bailey provided a link to this report in his motion brief. Dkt. 41 at *7. Ms. Montgomery does not contest its validity, so the Court may take judicial notice of the story because Ms. Montgomery incorporated it by reference into her amended complaint. Am. Compl. *8–9.

defendants were the City and Mr. Bailey. Thus, if Mr. Bailey read the article, or saw the televised report, he would surely have known that it concerned him.

Nevertheless, Ms. Montgomery's allegations fall short of establishing that Mr. Bailey drove through her worksite *to intimidate her*. The complaint contains no details about whether it was unusual for Mr. Bailey to drive through that worksite; or whether he had any other reason to be there; or whether his own worksite at the time was nearby or far away; or whether he had (or attempted to have) any actual interaction with Ms. Montgomery when he was at her site; or whether Ms. Montgomery was in fact intimidated by Mr. Bailey's actions. The Court needs to know details such as these before it can conclude that Mr. Bailey committed an act of retaliation. Currently, Ms. Montgomery's complaint establishes that Mr. Bailey *possibly* retaliated against Ms. Montgomery under color of state law, but it does not establish that he *plausibly* did so. *See Iqbal*, 556 U.S. at 678 (to survive a 12(b)(6) motion, a complaint must establish "more than the mere possibility of misconduct"). As such, Ms. Montgomery has failed to state a claim for First Amendment retaliation against Mr. Bailey.

*C. Alleged Retaliation by the City and by Mr. Velora*

Ms. Montgomery's amended complaint is extremely light on details about how the City and Mr. Velora retaliated against her for speaking to the news. The only claim that could even possibly relate to actions by either Defendant is an allegation that, after she spoke to the news, "a white male colleague" came and recorded her performing her work duties for 15 minutes, while "making sure he was standing where she could see him." Am. Compl. *10. But Ms. Montgomery provides no details about who this white man was (other than a "colleague"), or any reason to suspect that he was there at the behest of Mr. Velora or the City. Indeed, the amended complaint barely mentions Mr. Velora at all, and when he does appear, it is only in the context of failing to address Ms. Montgomery's internal complaints. *Id.* *9. With respect to the City, nothing indicates that the unnamed white man filmed Ms. Montgomery pursuant to some sort of City policy, as required under *Monell.* 436 U.S. at 694. Similarly,

despite the fact that the allegations establish that Mr. Bailey acted under color of state law, nothing in the amended complaint indicates that he drove through Ms. Montgomery's workplace pursuant to a City policy.[6] *Monroe v. Pape*, 365 U.S. 167, 172 (1961), *partly overruled on other grounds by Monell*, 436 U.S. at 658. As such, nothing in the amended complaint establishes that the City or Mr. Velora took any action in retaliation against Ms. Montgomery for talking to the news about her workplace harassment.

In sum, Defendants have successfully challenged, on various grounds, all of Ms. Montgomery's allegations of retaliation. All claims of First Amendment retaliation against Ms. Montgomery for her internal complaints are dismissed with prejudice. All claims of First Amendment retaliation against her for speaking to the news are dismissed without prejudice.

## V. Motion to Strike

Finally, Mr. Bailey has moved, pursuant to Rule 12(f), to strike certain allegations in the amended complaint that he was previously responsible, under a different name, for committing a horrendous act of racist violence. Mr. Bailey claims that these allegations are untrue, scandalous, and immaterial to Ms. Montgomery's legal claims.

As a general matter, "motions to strike are disfavored." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Particularly when discovery has not yet taken place, a court should not prejudge the truth of even the most scandalous allegations, so long as they reasonably relate to the complaint. Thus, as Ms. Montgomery correctly argues, "Allegations are subject to being stricken only if they are so unrelated to plaintiff's claims as to be unworthy of any consideration." Dkt. 54 at *6 (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)). However, even assuming (as the Court must) the truth of Ms. Montgomery's allegations about Mr. Bailey's past, the Court finds that these allegations are unrelated to any of Ms. Montgomery's legal claims. Whether Mr. Bailey

[6] A city employee can act under color of state law even if they are not acting pursuant to a municipal policy.

committed a hate crime in the past has nothing to do with whether he assaulted Ms. Montgomery, retaliated against her for exercising her First Amendment rights, or harassed her in a manner contributing to a hostile work environment. As such, the Court believes this to be the rare situation where striking is warranted because an allegation is "so unrelated to plaintiff's claims as to be unworthy of any consideration." *Id.*

Mr. Bailey also requests that the Court strike a statement later in the amended complaint that the City permitted Mr. Bailey to carry a gun on the job "despite his known violent past." Am. Compl. *8. Here the Court finds that striking is not appropriate. Mr. Bailey argues that this statement is another reference to the alleged past hate crime and should be stricken on the same grounds. However, here the context is not so clear. The statement in question could just as easily refer to Mr. Bailey's alleged assault of Ms. Montgomery in 2023 (when he displayed his gun to her). Ms. Montgomery alleges that she informed the City of that incident. If the City did indeed permit Mr. Bailey to carry a gun while on the job in 2025, it did so despite its knowledge that Mr. Bailey allegedly used a gun to threaten a coworker two years previously. The allegation therefore impacts Ms. Montgomery's claims that the City permitted a hostile work environment to exist; accordingly, striking this statement is inappropriate at this early juncture.

The Court therefore grants in part and denies in part Mr. Bailey's motion to strike. The Court orders that paragraphs 2 and 3 of Count V be stricken from the amended complaint.

## CONCLUSION

The Court grants in full Mr. Bailey's motion to dismiss [40] and Mr. Velora's motion to dismiss [45]; it grants in part and denies in part the City's motion to dismiss [46] and Mr. Bailey's motion to strike [40]. Counts I, II, and III may proceed. Count IV is dismissed without prejudice. In Count V, claims of assault occurring prior to May 15, 2024 are dismissed with prejudice; claims of assault occurring on or after that date are dismissed without prejudice. In Count VI, claims of retaliation for

internal complaints are dismissed with prejudice; claims of retaliation for speaking to the news are dismissed without prejudice. Finally, the Court strikes paragraphs 2 and 3 from Count V of the amended complaint.

**IT IS SO ORDERED.**

Date: 9/15/2026

Entered: ______________________
SHARON JOHNSON COLEMAN
United States District Judge